**Opinion issued September 24, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00251-CV

————————————

## IN THE INTEREST OF A.L.J., A.L.J., G.A.G.

---

## On Appeal from the 315th District Court
## Harris County, Texas
## Trial Court Case No. 2017-04601J

---

## MEMORANDUM OPINION

In this appeal, the mother of three minor children challenges the trial court's final decree terminating her parental rights based on findings that (a) she endangered the children, (b) she failed to comply with a provision of a court order specifying the actions necessary to obtain return of her children, and (c) termination of her parental rights was in the best interest of the children. TEX.

FAM. CODE § 161.001(b)(1)(E), (O); *id.* § 161.001(b)(2). She challenges the sufficiency of the evidence to support the predicate act and best interest findings. She also challenges the sufficiency of the evidence to support the court's subsequent decision to appoint the Department of Family & Protective Services ("Department") as managing conservator of the children.

We affirm.

## Background

This case concerns A.G. ("Mother") and her three children: A.L.J. ("Alicia") and A.L.J. ("Amelia"), twin girls born June 28, 2012, and G.A.G. ("George"), a boy born February 7, 2017.[1] On September 25, 2017, when the twins were almost five years old and George was eight months old, the Department received a report alleging that Mother subjected her children to neglectful supervision. According to the report, George's father and Mother were found unconscious in a car. George was in the back. The police responded and were able to wake Mother, who said she was tired from arguing with George's father. She stated that she had been staying in a hotel for a few days, and she admitted using synthetic marijuana. George was taken to the hospital as a safety precaution.

Two days later, the Department filed suit for protection of Alicia, Amelia, and George, and the children were placed in the Department's temporary managing

---

[1] We use pseudonyms to refer to the subject children and parents in this case. *See* TEX. FAM. CODE § 109.002(D); TEX. R. APP. P. 9.8(b)(2).

2

conservatorship. In November 2017, the trial court entered an order establishing the actions necessary for Mother to obtain the return of her children. The plan referenced an additional child protection case involving Mother and the twins in which Mother had been "under the influence" and the twins were placed with their grandmother. The plan noted that Mother was on probation for driving under the influence, posing a significant risk to the family due to her continued substance abuse.

The Department's plan listed as its goal that Mother demonstrate the ability to maintain a safe, stable, and sober lifestyle, and refrain from engaging in criminal activity. The plan required her to complete the following tasks: (1) maintain stable and safe housing for a minimum of six months; (2) provide the Department's caseworker with verification of any and all sources of income; (3) complete a parenting education course; (4) participate in a drug/alcohol assessment and follow all recommendations; (5) participate in random drug testing; (6) participate in a psychosocial assessment and follow recommendations; and (7) attempt to complete some services while incarcerated.

Trial began in February 2019. The Department called one witness, caseworker Jasmin Green. In her testimony, Green described the series of events giving rise to the Department's case, Mother's involvement with the criminal

justice system, Mother's progress on the service plan, and why termination was in the children's best interest.

Green testified that Mother had texted her at some point before trial to say that she was not able to leave work to attend the trial. Through her attorney, Mother did not call any witnesses and did not object to the admission of any of the Department's exhibits. After Green's testimony, the Department asked the trial court to terminate Mother's parental rights pursuant to sections 161.001(b)(1)(E) and (O) of the Texas Family Code. The children's attorney ad litem opined that the Department had met its burden to terminate Mother's parental rights. Following argument, the court terminated Mother's parental rights under sections (E) and (O) and named the Department as the children's sole managing conservator.[2] On March 7, 2019, the court signed a decree for termination reflecting those findings and that termination was in the children's best interest.

## Standards of Review

The interests of parents in the care, custody, and control of their children is a fundamental liberty interest protected by the United States Constitution. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). But the rights of natural parents are not absolute. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Protection of the child is paramount, and when the

---

[2] The court terminated both parents' parental rights, including alleged and unknown fathers of the children. Only Mother appealed.

4

State institutes proceedings to terminate parental rights, the courts focus on protecting the best interests of the child. *See id.*

We strictly scrutinize termination proceedings on appeal because the "evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citing *Santosky*, 455 U.S. at 747–48); *see In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

In conducting a legal sufficiency review, we view "the evidence in the light most favorable to the judgment," which means that we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. A reviewing court may not disregard undisputed facts that do not support the finding, but it "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* Evidence is legally sufficient when it enables a factfinder to "reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *Id.* at 265–66; *see* TEX. FAM. CODE § 101.007.

In a factual sufficiency review, the reviewing court again determines "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *J.F.C.*, 96 S.W.3d at 266 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). But rather than disregarding disputed evidence that the factfinder could have disbelieved, we consider whether "a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the children's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Due process requires, however, that when a parent has raised the issue of insufficiency of the evidence to support the trial court's findings under section 161.001(b)(1)(D) or (E) of the Family Code, an appellate court must address at those endangerment findings to ensure a meaningful appeal. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). Due process and due course of law requirements also mandate that an appellate court detail its analysis when a parent

6

appeals termination under section 161.001(b)(1)(D) or (E) of the Family Code. *Id.* at 237.

## Predicate Acts

On appeal, Mother contends that the evidence was not legally or factually sufficient to support a finding that she endangered her children under section 161.001(b)(1)(E) or that she failed to comply with a provision of a court order establishing necessary actions to obtain the return of the children under section 161.001(b)(1)(O).

**A.      The evidence was legally and factually sufficient to show that Mother endangered the children under section 161.001(b)(1)(E).**

A court may order termination of the parent-child relationship if it finds by clear and convincing evidence that a parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). The relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failure to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

The word "endanger" as used in section 161.001 "means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family

7

environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). In this context, endanger means to expose to loss or injury, or to jeopardize. *Id.* (internal citations omitted); *see Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (endangerment includes jeopardizing a child's emotional or physical health); *accord In re A.J.H.*, No. 01-18-00245-CV, 2019 WL 190050, at *7–8 (Tex. App.—Houston [1st Dist.] Jan. 15, 2019, no pet.) (mem. op.). Danger to the child's well-being can be inferred from parental misconduct alone, and courts may consider parental conduct both before and after the child's birth. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Termination under section (E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The undisputed evidence supports the court's finding under section (E). Mother's criminal history, including her ten-month period of incarceration, her use of illegal drugs, and her history of instability support a finding of endangerment. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *N.A.B. v. Tex. Dep't of Family & Protective Servs.*, No. 03-14-00377-CV, 2014 WL 6845179, at *2 (Tex. App.—Austin Nov. 26, 2014, no pet.) (mem. op.). Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under section (E). *See C.A.B.*, 289 S.W.3d at 886. Likewise, "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *J.O.A.*, 283 S.W.3d at 345. Illegal drug use may support termination under section (E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. In addition, "a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical and emotional wellbeing." *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (quoting *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *9–10 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet. ) (mem. op.)).

The record reflects that Mother was incarcerated repeatedly, violated her supervision terms multiple times, and continued to use drugs during the pendency of her case, despite the threat of reincarceration or termination of her parental rights. Mother pleaded guilty to "conspiracy to transport illegal aliens" in 2016.[3] Before pleading guilty, she was incarcerated for nearly 10 months between August 2014 and June 2015. She was incarcerated again in late June 2016 until July 8, 2016. In July 2016, the court sentenced her to time served and three years' supervised release. At the time of sentencing, she had been incarcerated for a large portion of her twin daughters' lives.

The supervised release terms required her to support her children, refrain from possessing or using controlled substances, refrain from associating with people who engage in criminal activity, and submit to periodic drug screening. Despite the terms of her supervision, the record demonstrates that Mother continued to subject herself and her children to the possibility that she would be incarcerated again for violating the terms of supervision. *See Walker*, 312 S.W.3d at 617. In 2017, police found Mother unconscious in a car. George was asleep in the back seat, and Mother admitted to being under the influence of illegal drugs. This incident occurred while Mother was on supervised release and could have resulted in further imprisonment. The record shows that Mother was again

---

[3]     The underlying facts of this conviction are not in the record.

incarcerated in November 2017 at the initiation of the child protection case. Mother also lived with a man who was arrested for human trafficking, in violation of her supervised release requirement not to associate with people who engage in criminal activity.[4] A.G.'s service plan notes a previous case with the Department involving the twins in which Mother was on probation for driving under the influence and had been under the influence during the investigation. Finally, in January of 2019, Mother tested positive for amphetamines or methamphetamines.

Mother argues that the evidence is insufficient because there is no evidence that the children were physically harmed. But endangering conduct need not result in direct harm to the child. *Walker*, 312 S.W.3d at 617. A reasonable factfinder could conclude that Mother endangered the children, considering her involvement with the criminal justice system, her continued use of illegal drugs, and her violations of supervision. We conclude that the evidence would enable a factfinder to "reasonably form a firm belief or conviction" that Mother engaged in conduct which endangered the physical or emotional wellbeing of her children. *See* TEX. FAM. CODE § 161.001(b)(1)(E). The evidence was both factually and legally sufficient to support the trial court's finding under section (E). We overrule Mother's issue relating to the legal and factual sufficiency of the evidence to support the trial court's finding of this predicate act.

---

[4] The specific crime and underlying facts are not in the record.

**B.    The evidence was legally and factually sufficient to support termination under section 161.001(b)(1)(O).**

Mother contends that the evidence is legally and factually insufficient to support termination of her parental rights under section (O). Specifically, she argues that the Department did not meet its burden of proving that she failed to complete the requirements of her court-ordered family service plan.

Texas Family Code section 161.001(b)(1)(O) provides that the court can order termination upon a finding by clear and convincing evidence that the parent has failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child. TEX. FAM. CODE § 161.001(b)(1)(O). A trial court may direct a parent to perform specific acts by ordering her to comply with a family service plan created by the Department. *See In re A.A.*, No. 01-13-00524-CV, 2013 WL 6569922, at *9 (Tex. App.—Houston [1st Dist.] Dec. 12, 2013, pet. denied) (mem. op.). Partial or substantial compliance with a court order is not enough to avoid a termination finding under section 161.001(1)(O). *See In re M.C.G.*, 329 S.W.3d 674, 676 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *In re T.T.*, 228 S.W.3d 312, 319 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). We note that in a bench trial, we may "presume the trial court took judicial notice of its record without any request being made and without any announcement that it has done so." *In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see*

12

*also In re B.D.A.*, 546 S.W.3d 346, 363–64 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

There is no dispute that at the time of trial the children had been in the temporary managing conservatorship of the Department for not less than nine months as a result of their removal for abuse or neglect. The evidence further demonstrates, and Mother does not dispute, that the trial court signed an order in November 2017 in which the court ordered Mother to comply with each of the requirements in her service plan prepared by the Department one month earlier.

The service plan outlined the following tasks: (1) maintain stable and safe housing for a minimum of six months; (2) provide the caseworker with any and all sources of income; (3) complete a parenting education course; (4) participate in a drug/alcohol assessment and follow all recommendations; (5) participate in random drug testing; (6) participate in a psychosocial assessment and follow all recommendations; (7) attempt to complete some services while incarcerated. The order set forth with certainty the specific terms for compliance and the actions that Mother needed to take to obtain the return of her children. *See N.G.*, 577 S.W.3d at 238–39 (stating that under section 161.001(b)(1)(O) an order must be sufficiently specific to warrant termination of parental rights, and an order that dictates the actions necessary for the parent to obtain return of a child is sufficiently specific

13

when the terms for compliance are set forth with certainty so that the parent knows the obligations that have been imposed).

The record reflects that Mother completed limited services by the time of trial. Green testified that, at least initially, Mother was participating in the services listed on her plan, but her involvement slowed. The permanency order from November 2018 indicates Mother was not making acceptable progress on the service plan. Green testified that Mother lived with a man who was subsequently arrested for human trafficking. Mother relied on him to support herself. In December 2018, two months before trial, Green spoke with Mother about the plan, told her that she was behind in completing the tasks, and that if she did not complete the tasks the Department would move for termination.

At the time of trial, the only services Mother reported to Green that she had finished were the parenting course and a substance abuse assessment. Though Mother said she had completed the parenting course, she did not provide Green with the certificate to verify completion because she lost it in a "domestic dispute" with a family member. As to the substance abuse assessment, Green explained that Mother was involved in individual therapy and substance abuse treatment and her participation was ongoing. But Green also testified that on one occasion, Mother overdosed on medication and was hospitalized for three weeks.

Mother did not complete the other tasks on her service plan. The service plan required her to submit to drug testing and demonstrate progress by testing negative for drugs and alcohol. Green testified that Mother tested positive for methamphetamine or amphetamines one month before trial. Mother did not provide proof of income or housing. A permanency report to the court filed a few days before trial notes that Mother was searching for housing and though she reported being employed, she had not provided proof of income to her caseworker. The record reveals no evidence that Mother completed the psychosocial assessment, and Mother does not claim that she did.

Substantial compliance with a service plan is not sufficient to avoid a termination finding under Texas Family Code section 161.001(b)(1)(O). *See In re M.C.G.*, 329 S.W.3d 674, 676 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("The Family Code does not provide for substantial compliance with a family services plan."). While it is undisputed that Mother completed some tasks in the family service plan and that she initially took steps to regain custody, she ultimately failed to complete all of the tasks called for in the court-ordered plan and gave up her efforts to comply. Mother does not argue that she was unable to comply or that she made a good faith effort to comply. *See* TEX. FAM. CODE § 161.001(d). Considering all of the evidence presented, including any disputed or conflicting evidence, we find that a reasonable factfinder could have found that

15

Mother failed to comply with all of the terms of the court-ordered service plan. Thus, we conclude that there is legally and factually sufficient evidence of Mother's failure to comply with a court order. We overrule Mother's issue relating to the legal and factual sufficiency of the evidence to support the trial court's finding of a predicate act pursuant to section 161.001(b)(1)(O).

### Best Interest of the Child

In her third issue, Mother argues that the evidence is legally and factually insufficient to support the trial court's determination that termination of her parental rights was in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(2). We disagree.

"A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship." *Walker*, 312 S.W.3d at 618. The "best interest" finding is a separate inquiry from the finding of a predicate act, but evidence that supports a predicate act finding may also be probative of the best interest of the child. *In re A.R.R.*, No. 01-18-00043-CV, 2018 WL 3233334, at *4 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied) (mem. op.). Our review of the trial court's best interest finding is guided by the following non-exclusive factors:

(1) the desires of the child,

(2) the emotional and physical needs of the child now and in the future,

(3)      the emotional and physical danger to the child now and in the future,

(4)      the parental abilities of the individuals seeking custody,

(5)      the programs available to assist these individuals to promote the best interest of the child,

(6)      the plans for the child by these individuals or by the agency seeking custody,

(7)      the stability of the home or proposed placement,

(8)      the acts or omissions of the parent that may indicate the existing parent-child relationship is not proper, and

(9)      any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department is not required to prove all of these factors, and the absence of evidence about some factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 27.

Multiple factors support the trial court's finding that termination of Mother's rights was in the children's best interest.

**Desires of the Children**

At the time of trial, Alicia and Amelia were six years old and George was two years old. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well cared

17

for by the foster family, and have spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The record reflects that the children spent minimal time with Mother. Mother was incarcerated for a large portion of the twins' lives. When Mother committed the federal offense in August 2014, they were two years old. Subsequently, in the time leading up to her guilty plea in 2016, she was incarcerated for nearly 10 months. In September 2017, when the girls were five and George was eight months old, Mother was found unconscious in a car with George in the backseat. The record reflects that before this incident, the twins had previously been removed from Mother's care and placed with their grandmother during an investigation, though it is unclear how long they were removed. The record shows that Mother was incarcerated when served with the Department's suit. Once the Department became the temporary managing conservator of the children in November 2017, Mother began having monthly visits with them. The undisputed evidence shows that Mother missed monthly visits and had not had a visit since December 2018. Green testified that she contacted Mother before her January 2019 visit, and Mother responded that she had been in a psychiatric hospital. Mother told Green she had been diagnosed with bipolar disorder, Green testified that at some point during the pendency of the case Mother overdosed on

medication and was hospitalized for three weeks. Mother did not attend any visits in 2019.

The record also reflects that the children were thriving with the foster family. They had been living with the foster family since shortly after removal, and their needs were being met.

**The emotional and physical needs of the children now and in the future; the emotional and physical danger of the children, now and in the future; and the ability of Mother to parent and provide for the children's needs**

The record supports a finding that termination is in the children's best interests according to the second, third, and fourth *Holley* factors. Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *In re A.M.*, 385 S.W.3d 74, 82 (Tex. App.—Waco 2012, pet. denied). The evidence discussed in support of the trial court's findings under section 161.001(b)(1) is probative of a finding as to potential danger in determining the children's best interests. *See Walker*, 312 S.W.3d at 618.

In addition, Mother continued to use illegal drugs while the case was pending and while on supervised release. A parent's drug use supports a finding that termination is in the best interest of the children. *In re L.E.R.*, No. 14-15-00205-CV, 2015 WL 3918062, at *8 (Tex. App.—Houston [14th Dist.] June 25, 2015, no pet.) (mem. op.). When police found Mother unconscious in the car with George in the backseat, she admitted she had used synthetic marijuana. This was in

violation of her supervised release. Mother also violated her supervised release by associating with individuals engaged in criminal conduct. Green testified that Mother was married to a man who was arrested for human trafficking. He had been supporting her, and without him, she was unable to support her family. On one occasion, Mother overdosed on medication and was hospitalized for three weeks. Finally, in January before trial, Mother tested positive for amphetamine or methamphetamines.

"Stability is important in a child's emotional and physical development." *In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "Without stability, income, or a home, [a parent] is unable to provide for the child's emotional and physical needs." *In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.). The evidence at trial was that Mother had not shown proof of stable employment or housing. Upon her spouse's incarceration, she was unable to fully provide for herself and her children.

**The programs available to assist Mother to promote the best interest of the child**

As to the fifth factor, the evidence shows that Mother attempted some of the services in her family service plan, but she failed to complete the majority of them. She did not provide proof of completing the parenting class, and she did not provide proof of income or housing. Though she was referred for a psychosocial assessment, she did not complete it. Though she was receiving outpatient substance

abuse treatment, she tested positive for drugs in the month before trial. While programs were available to Mother, she did not utilize them.

**The plans for the child by the individuals or agency seeking custody and the stability of the home or proposed placement**

Mother did not offer any evidence of her future plans with the children. At the time of trial, she had not provided the Department with proof of housing. While she told her caseworker that she was working, she did not provide proof of her employment. The record reflects that the children were doing well in their placement. Their needs were met with their foster family, and they were enrolled in school. The Department had identified a potential relative placement and sought permanent placement either with the relative or the current foster family.

Taking these factors into consideration in conjunction with the entire record, a factfinder could reasonably conclude that the children's best interest would be better served through the Department's plan to be adopted by either a family member or their foster parents. *See C.H.*, 89 S.W.3d at 28 (noting evidence about placement plans and adoption are relevant to the best interest finding).

**The acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper and any excuse for the acts or omissions of the parent**

We consider Mother's acts or omissions and any excuses for her acts or omissions. As set forth above, Mother had been absent from the children's lives during her various periods of incarceration. She continued to use illegal drugs

while on supervision, both during the incident that led to the children's removal and one month before trial. The record reflects that at one point during the twins' lives, Mother was on probation for driving under the influence. She did not show proof of financial support or housing for the children, and she did not complete her family service plan. She did not attend the trial and did not present an excuse for her conduct.

Considering the entire record, we conclude that a reasonable factfinder could have formed a firm belief or conviction that the best interest of Amelia, Alicia, and George would be served by termination of Mother's parental rights. We therefore find the evidence legally and factually sufficient to support the trial court's findings. We overrule Mother's second issue.

### Conservatorship of the Child

Mother challenges the sufficiency of the evidence to support the finding that appointment of the Department as managing conservator of the children is in their best interest. Specifically, Mother contends that there was no evidence in the record regarding her parenting abilities or the quality of her interactions with her children and insufficient evidence regarding the events giving rise to the suit.

When the parents' rights are terminated, the trial court must appoint "a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." TEX. FAM.

CODE § 161.207(a); s*ee In re M.M.M.*, No. 01-16-00998-CV, 2017 WL 2645435, at *17 (Tex. App.—Houston [1st Dist.] June 16, 2017, no pet.) (mem. op.). Conservatorship determinations are reviewed for an abuse of discretion and will be reversed only if the decision is arbitrary and unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616, (Tex. 2007); *see also A.C.*, 394 S.W.3d at 644.

An order terminating the parent-child relationship divests the parent of all legal rights and duties with respect to the child. TEX. FAM. CODE § 161.206(b). Once we overrule a parent's challenge to a termination order, the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination pursuant to Family Code section 161.207." *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Because we have overruled Mother's challenge to the portion of the trial court's order terminating her parental rights, the order has divested Mother of her legal rights and duties related to Alicia, Amelia, and George. *See* TEX. FAM. CODE § 161.206(b); *In re D.K.W., Jr.*, No. 01-17-00622-CV, 2017 WL 6520439, at *5 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.). As a result, Mother does not have standing to challenge the portion of the order appointing the Department as permanent managing conservator of the children because any alleged error could not injuriously affect her rights. *D.K.W., Jr.*, 2017 WL 6520439, at *5. We overrule this issue.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly<br>
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.